**Joseph GARAMELLA and Nicholas Mainiero, Plaintiffs,**

v.

**CITY OF BRIDGEPORT and Town of Stratford, Defendants.**

**No. 3:97CV2168(WWE).**

United States District Court, D. Connecticut.

Aug. 17, 1999.

Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT, for Plaintiffs.

Russell D. Liskov, Barbara Brazzel–Massaro, Office of the City of Bridgeport, CT, Richard J. Buturla, Warren L. Holcomb, Berchem, Moses & Devlin, P.C., Milford, CT, for Defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiffs, Joseph Garamella and Nicholas Mainiero, each own separate parcels of unimproved real property adjacent to the Sikorsky Memorial Airport in Stratford, Connecticut. The plaintiffs allege that the city of Bridgeport and the town of Stratford have taken their properties without just compensation in violation of their state and federal constitutional rights.

The plaintiffs have moved for summary judgment as to liability. The two defendants, Bridgeport and Stratford, have moved separately for summary judgment to dismiss plaintiffs' claims.

## BACKGROUND

The parties have submitted affidavits, exhibits and Local Rule 9(c) statements of facts, which reveal the following undisputed facts.

### 1. The Igor Sikorsky Airport

In 1937, the city of Bridgeport purchased what is known as the Igor Sikorsky Memorial Airport. The airport is located within the town of Stratford and has operated continuously since its purchase with the exception of a period during World War II.

Since 1937, Bridgeport and Stratford have been involved in numerous legal disputes concerning the airport, its improvements, expansion, taxability, and the acquisition of property. Bridgeport has described its relationship with Stratford as acrimonious.

In the late 1950s, Bridgeport developed a document known as the Master Plan, which outlines acquisitions advisable to protect airport runways and identifies areas outside of the runways as zones where the placement of structures will be scrutinized. The Master Plan has been continuously updated since 1958.

In 1978, Bridgeport and Stratford entered into an agreement that limited the ability of Bridgeport to obtain property without the permission of Stratford.

### 2. The Gamarella and Mainiero Parcels

On November 1, 1968, plaintiff Joseph Garamella purchased 3.5702 acres of unimproved land adjacent to the Sikorsky Memorial Airport for approximately $18,000. The Gamarella parcel is on Access Road and a portion of the property lies adjacent to runway 11 of the airport.

From approximately 1969 to 1985, Garamella leased his parcel to AVCO Lycoming, during which time the parcel remained unimproved. Prior to 1988, Garamella never attempted to develop his parcel. Additionally, he never applied to the Strat-

ford Planning and Zoning Commission for either a use or building permit.

On April 8, 1987, plaintiff Nicholas Mainiero, who is a former Airport Manager, purchased his parcel consisting of .9775 acres of unimproved land for approximately $100,000. The Mainiero parcel abuts the Garamella parcel and has frontage on Access Road.

Prior to Stratford enacting an airport zoning ordinance in 1997, the Mainiero and Garamella properties were zoned by Stratford as MA Light Industrial, which allowed for a building of up to sixty feet in height.

### 3. National Properties, Inc.'s Proposed Construction

On March 2, 1988, Garamella and Mainiero entered into a written contract to sell their respective parcels to National Properties, Inc. for $450,000 per acre. The contract was expressly conditioned upon the simultaneous sale to National Properties of both the Garamella and Mainiero parcels without a defect in title that would prevent the conveyance of marketable title for both parcels.

In October, 1988, National Properties obtained various approvals from Stratford's Board of Zoning Appeals and its Planning & Zoning Commission in connection with its plan to construct a 77,000 square foot office building on the Garamella and Mainiero parcels.

Bridgeport then filed an action for a temporary restraining order ("TRO") and declaratory relief against Stratford, alleging that Stratford was required to adopt, administer and enforce airport zoning regulations in accordance with Section 15–91(a) of the Connecticut General Statutes. On February 2, 1989, the Connecticut Superior Court issued an ex parte TRO that ordered Stratford not to issue building permits or approve zoning applications to National Properties for any building in the "Airport Impact Zone" pending the court's decision on Bridgeport's declaratory relief

action. Consequently, on April, 10, 1989, Stratford's Planning and Zoning Commission deferred action on National Properties' Sediment and Erosion Control application.

On May 15, 1989, Bridgeport filed a Notice of Claim of Easement asserting that it had acquired a right-of-way in the navigational airspace over a portion of the Garamella parcel.

On July 11, 1990, National Properties notified Garamella and Mainiero that it was exercising its right to terminate its contract with them because a building permit could not be obtained for the proposed office building and because the easement created a title defect.

### 4. *Stratford Airport Zoning Ordinance*

On July 18, 1997, the Connecticut Superior Court ordered Stratford to adopt forthwith, administer and enforce, without condition, airport zoning regulations that restrict the height of trees and structures in the aerial glide zone.

On September 27, 1997, Stratford adopted airport zoning regulations for Sikorsky Memorial Airport in compliance with Section 15–91(a) and the Superior Court order.

Approximately two acres of Garamella's 3.5 acre parcel are within the runway protection zone of runway 11 pursuant to the Stratford airport zoning ordinance presently in effect. The Mainiero parcel is not within a runway protection zone.

When the Garamella and Mainiero parcels are combined, approximately 2.5 acres of the combined lots are outside the runway protection zone and are not subject to any special height and use restrictions in the ordinance. However, since the enactment of the ordinance, no application has been made to Stratford for a building or use permit for either parcel owned by Mainiero and Garamella.

### 5. *Bridgeport's Purchase Offer*

On April 19, 1995, Bridgeport offered to purchase Garamella's parcel for $310,000, which offer Garamella refused. To date, the Garamella and Mainiero parcels remain legally distinct in title.

## DISCUSSION

### A. Standard of Review

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### B. Plaintiffs' Claim of A Physical Taking

Plaintiffs argue that Bridgeport's recorded easement in the navigable airspace above the Garamella parcel constitutes a

physical invasion of the property and is thereby a physical taking in violation of the United States Constitution and the Connecticut Constitution.

■ A physical taking requires just compensation regardless of its justification. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). An avigational easement over a plaintiff's property may in some instances constitute a physical taking. *See Griggs v. Allegheny County*, 369 U.S. 84, 90, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). Where the frequency and altitude of the flights prevent the property owner from using the land for any purpose, the property owner's loss is complete as if the government had entered upon the land and taken exclusive possession of it. *United States v. Causby*, 328 U.S. 256, 266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946).

■ In this instance, the fact that National Properties terminated its contract after Bridgeport filed notice of its avigational easement does not establish as a matter of law that flights over the Garamella parcel prevent the plaintiff property owners from using the land for any purpose. Material issues of fact exist concerning the extent of the intrusion caused by the flights over the Garamella property. Therefore, summary judgment will not enter on the issue of the physical taking.

## C. Plaintiffs' Claim of A Regulatory Taking

■ Plaintiffs argue that the TRO issued by the state Superior Court and Stratford's adoption of its airport zoning ordinance have resulted in a regulatory taking. A regulatory taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution occurs when a land-use regulation fails to substantially advance a legitimate state interest or denies the property owner all economically beneficial or productive use of the land. *Lucas*, 505 U.S. at 1015–1016, 112 S.Ct. 2886. Property may be regulat-

ed to a certain extent, but if a regulation goes too far, it will be recognized as a taking. *Pennsylvania Coal v. Mahon*, 260 U.S. 393, 414–415, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

■ Similarly, a regulatory taking in violation of the Connecticut Constitution occurs when a regulation permanently restricts the use of property to such an extent that it cannot be used for any reasonable purpose. *Horwitz v. Waterford*, 151 Conn. 320, 324, 197 A.2d 636 (1964). The Court may also consider, in some circumstances, the degree of diminution to the land value, the nature and degree of the public harm to be prevented, and the alternatives available to the land owner. *Brecciaroli v. Connecticut Commissioner of Environmental Protection*, 168 Conn. 349, 356, 362 A.2d 948 (1975).

■ In this instance, the land use regulations that were enacted by Stratford have never been applied to the plaintiffs' property. Therefore, the Court cannot at this time determine the extent to which the plaintiffs are deprived of reasonable, economic or beneficial uses of their land.

The Court is not persuaded that the loss of the National Properties sale in 1990 was a final deprivation of all economically viable uses. The full extent of the plaintiffs' deprivation will be established after the Stratford agency's final determination of plaintiffs' uses of their property. *Williamson Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 185, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Therefore, plaintiffs' claims are not yet ripe for this Court's review and will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the plaintiffs' and defendant Bridgeport's Motions for Summary Judgment are DENIED with prejudice relative to the alleged physical taking resulting from Bridgeport's avigational easement [docs. # 27 and 42].

Plaintiffs' Motion for Summary Judgment, defendant Bridgeport's Motion for Summary Judgment, and defendant Stratford's Motion for Summary Judgment are DENIED without prejudice as to the alleged regulatory taking [docs. # 27, 32, and 42].

Plaintiffs' allegations of a regulatory taking resulting from the TRO and adoption of the airport zoning ordinance are insufficiently ripe for this Court's review and are dismissed without prejudice. Plaintiffs are instructed within 30 days of this ruling to amend the complaint to comport with this ruling.

SO ORDERED.